1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ASHER J. BECKER,

                  Plaintiff,

      v.

BRENT CARNEY, *et al.*,

                Defendants.

CASE NO. 3:16-cv-05315-RBL-JRC

REPORT AND RECOMMENDATION
AND ORDER ON MOTION TO STAY

NOTED FOR: August 28, 2020

     The District Court has referred this 42 U.S.C. § 1983 civil rights action to the

undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules

MJR1, MJR3, and MJR4.

     Plaintiff, who acts *pro se* and who was incarcerated at the Stafford Creek Corrections

Center ("SCCC"), brought suit in April 2016. After this Court granted a defense summary

judgment motion, plaintiff appealed the dismissal of his claims to the Ninth Circuit. The Ninth

Circuit reversed in part, finding that the Court had failed to consider certain evidence supporting

plaintiff's claims and remanding for the Court to reconsider its decision on plaintiff's claims that

he was retaliated against by an SCCC food manager (Joe Williamson) and two employees who

1   processed his grievances (Kerri McTarsney and Dale Caldwell).  Now before the Court are the

2   parties' cross-motions for summary judgment on these claims, as well as their Court-ordered

3   supplemental briefing.

4          Previously, the Court found that a state rule of evidence (the "Dead Man's Statute," RCW

5   5.60.030), precluded plaintiff's testimony about statements that Williamson, who is deceased,

6   allegedly made to plaintiff.  On remand, this Court *sua sponte* looked again at the admissibility

7   of this testimony, advised the parties that it intended to recommend that the Washington State

8   Dead Man's Statute did *not* bar the admission of any testimony, and gave the parties an

9   opportunity to provide additional briefing.  Dkt. 214.  The parties provided additional briefing.

10  Dkt. 215, 216..

11         After further consideration, this Court now recommends that the District Court reconsider

12  the finding that the Dead Man's Statute applies regarding the federal claims—a finding that was

13  clearly erroneous.  The Court should not exclude plaintiff's testimony.   Plaintiff's testimony

14  about Williamson's statements creates genuine factual issues material to the outcome and

15  supporting plaintiff's claims.  Williamson allegedly threatened to obtain plaintiff's transfer to

16  another institution if plaintiff pressed his grievances and allegedly revealed plaintiff's complaints

17  to other prisoners, telling them that fundraiser and holiday events would be canceled if plaintiff

18  continued raising issues—actions and statements that, taken as true, support a finding that

19  Williamson retaliated against plaintiff for engaging in protected activity.

20         Although the claim against Williamson should survive summary judgment, plaintiff has

21  failed to show that defendants McTarsney or Caldwell violated law that was clearly established.

22  The claims against these two defendants should be dismissed with prejudice.  The state law

23  claims should also be dismissed with prejudice because plaintiff comes forward with no legal

24

1  basis for his claims of "official misconduct" and the chapter of Washington State law

2  criminalizing "official misconduct" does not provide for a private right of action.

3      The undersigned therefore recommends granting in part and denying in part defendants'

4  summary judgment motion and denying plaintiff's motion for summary judgment as untimely.

5  All claims other than the claims against Williamson for retaliation—including the claims against

6  McTarsney and Caldwell and the remaining state law claims—should be dismissed with

7  prejudice.

**BACKGROUND**

**I. Procedural History**

10      Plaintiff initiated this matter in April 2016.  *See* Dkt. 1.  In August 2017, defendants

11  including McTarsney and Caldwell filed a motion for summary judgment dismissal of plaintiff's

12  claims.  Dkt. 110.  Williamson's widow was allowed to substitute for Williamson, and she joined

13  in the reply in support of the motion.  *See* Dkts. 90; 131, at 1; 153.

14      The undersigned recommended granting the summary judgment motion.  *See* Dkt. 162.

15  Regarding the retaliation claim against Williamson, the report and recommendation found that

16  the Dead Man's Statute applied to prevent the Court from relying on any of plaintiff's testimony

17  about conversations with Williamson.  Dkt. 162, at 13.  The undersigned therefore recommended

18  dismissal of plaintiff's claims against Williamson.  Dkt. 162, at 13, 15.  The District Court

19  adopted the report and recommendation in full.  Dkt. 170.

20      Plaintiff appealed to the Ninth Circuit, which affirmed except as follows—

In the sworn declaration of Peter McDaniels [plaintiff's former cellmate], McDaniels corroborated [plaintiff's] allegations that Williamson retaliated against [plaintiff] for filing a grievance.  Because the McDaniels[] declaration raises a genuine dispute of material fact as to whether Williamson retaliated against [plaintiff], we reverse the judgment *as to this claim only* and remand for further proceedings.

Dkt. 189, at 4 (emphasis added).  The Ninth Circuit also remanded for reconsideration of whether to exercise supplemental jurisdiction over plaintiff's state law claims, in light of the partial reversal.  Dkt. 189, at 4.  And, in an order denying a petition for rehearing, the Ninth Circuit later clarified that,

> To the extent that [plaintiff] seeks clarification on the status of the retaliation claim against defendants McTarsney and Caldwell, which is related to the retaliation against defendant Williamson, we clarify now that the retaliation claim against McTarsney and Caldwell can be considered by the district court on remand.

Order (Dkt. 28) at 1–2, *Asher James Becker v. Brent Carney et al.*, No. 18-35373 (9th Cir. May 29, 2019).

Thus, for purposes of this report and recommendation, the only outstanding claims are (1) the claim against Williamson for retaliation related to issues with the meal plans; (2) related retaliation claims against McTarsney and Caldwell; and (3) any related state law claims.

## II. Defendants' Summary Judgment Motion

Following remand, the parties conducted additional discovery, and defendants filed another summary judgment motion, including a notice to plaintiff of dispositive motion.  *See* Dkts. 199, 201.  Plaintiff filed a cross-motion for summary judgment, to which defendants have filed their response.  *See* Dkts. 211, 213.  Their motions are ripe for review.

The undersigned has additionally obtained supplemental briefing from the parties on "whether the Court should grant summary judgment dismissal of plaintiff's claims against Joe Williamson for retaliation" if the Court concludes that the Dead Man's Statute does not apply. *See* Dkt. 214, at 3.

## III.  Summary of Facts in Support of Summary Judgment Motions

1          **A. Grievances and Investigations**

2          In May 2015, plaintiff filed a food-policy-related grievance, which Williamson

3    participated in investigating.  Dkt. 211, at 29–32.  Plaintiff later filed a separate grievance stating

4    that during this investigation, Williamson retaliated against plaintiff by threatening to send an

5    email that would result in plaintiff's transfer to another institution.  Dkt. 211, at 34; *see also* Dkt.

6    211, at 36.  Defendant McTarsney informed plaintiff that this was "[n]on-grievable as a separate

7    complaint," and defendant Caldwell wrote that plaintiff should "follow the grievance

8    coordinator's instructions" to pursue this as part of his grievance about the food policy.  *See* Dkt.

9    211, at 36, 39.

10          In October 2015, plaintiff filed another grievance about Williamson allegedly retaliating

11    against plaintiff, this time claiming that Williamson had threatened to cancel prison fundraisers

12    when plaintiff grieved issues about the food available at the fundraisers and had told other

13    prisoners that this was because of plaintiff's and McDaniels' complaints.  Dkt. 211, at 41.

14    Plaintiff asserted that "more tha[n] a dozen inmates have told me Joe told them I was trying to

15    get the fund raiser cancelled."  Dkt. 211, at 41.  Defendant McTarsney denied this grievance

16    because it was, in her view, "hearsay."  Dkt. 211, at 41.  Plaintiff renewed his grievance, this

17    time with a declaration from McDaniels attached, and defendant McTarsney and defendant

18    Caldwell concurred in denying it as hearsay.  Dkt. 211, at 43.

19          In January 2016, plaintiff filed a grievance about holiday meal enhancements, which

20    Williamson again participated in investigating.  Dkt. 211, at 45–46.  Plaintiff claimed that

21    defendant Williamson "threatened to cancel all the holiday meal enhancement[s] and has told

22    other inmates it's my fault for grieving[.]"  Dkt. 211, at 50.  Defendant McTarsney again denied

23    plaintiff's separate complaint about this alleged retaliation, stating that it had to be included in

24

1    his appeal of his holiday-meal-enhancement grievance.  Dkt. 211, at 52.  Defendant Caldwell

2    affirmed defendant McTarsney's determination.  Dkt. 211, at 54.  In April 2016, defendant

3    Caldwell overturned defendant McTarsney's determination and requested that plaintiff's

4    grievance be re-opened.  Dkt. 211, at 56.

5              **B.  Defendants Caldwell's and McTarsney's Declarations**

6              Defendants primarily rely upon various declarations submitted in support of their prior

7    summary judgment motion.  *See* Dkts. 111–18, *cited in* Dkt. 199.  In her declaration, defendant

8    McTarsney states that she believed that under DOC policy, plaintiff's complaints that

9    Williamson was retaliating for plaintiff raising issues about the meal enhancements and food

10   policy had to be brought as part of the grievance process for the underlying complaints, not

11   separately.  Dkt. 115, at 3.  When her decision was overturned, she assumed that plaintiff would

12   contact her if he wished to pursue the grievance, as he had done in the past.  Dkt. 115, at 3.

13             Defendant Caldwell states that Williamson's medical leave stymied the investigation into

14   plaintiff's allegation of retaliation related to the food policy grievance.  Dkt. 111, at 2.

15   Defendant Caldwell agreed with defendant McTarsney that the allegations of retaliation by

16   informing other prisoners of plaintiff's complaints relied on hearsay, which cannot form the basis

17   for a grievance.  Dkt. 111, at 7.

18             **C.  Plaintiff's, McDaniels', and Justin Garrett's Declarations**

19             Plaintiff asserts that when he met with Williamson in May 2015 to discuss plaintiff's

20   grievance about the food policy, Williamson "appeared vis[i]bly upset and angry at having to

21   investigate my grievance."  Dkt. 211, at 20.  "He said it was 'frivolous' and pressured me to drop

22   my complaint."  Dkt. 211, at 20.

23

24

REPORT AND RECOMMENDATION AND ORDER
ON MOTION TO STAY - 6

1    Plaintiff alleges that Williamson said, "SCCC policy wasn't going to change, and 'If you

2    don't like how we do things here [at SCCC], I can send an E-Mail and have you sent to another

3    prison.'" Dkt. 211, at 20.  Plaintiff was "shocked and frightened" and told Williamson "not to

4    transfer me"—to which Williamson allegedly responded "'I'm just telling you how it is.  So

5    what are you going to do about this gr[ie]vance?'" Dkt. 211, at 20.  Plaintiff states that he

6    believed that Williamson could carry out this threat because Williamson was well-liked and "had

7    a lot of power and friendships to get people hired or fired in the kitchen, or talk to people to

8    transfer them." Dkt. 211, at 21.

9    Related to the fundraisers, plaintiff alleges that later, he asked Williamson if there would

10   be Halal options at upcoming fundraisers, stating plaintiff's intent to file a grievance about the

11   lack of Halal options.  Dkt. 211, at 22.  Plaintiff states that within a few days, he was threatened

12   and harassed by other prisoners about his grievances—and that Williamson "was the only DOC

13   staff I had sent kites and complaints to about this issue." Dkt. 211, at 23.  Plaintiff alleges that

14   other prisoners told him that Williamson had threatened to cancel the fundraisers if plaintiff and

15   others continued to grieve them.  Dkt. 211, at 23.  Williamson ultimately canceled the fund raiser

16   at issue.  Dkt. 211, at 23.

17   Finally, related to the holiday meal enhancements, plaintiff states that within an hour of

18   meeting with defendant McTarsney about his grievance related to the enhancements, another

19   prisoner had "asked why I was grieving the holiday meals, because [Williamson] was going to

20   cancel them." Dkt. 211, at 24.  Plaintiff states that defendant McTarsney later told him that she

21   had e-mailed the grievance to Williamson immediately before her meeting with plaintiff.  Dkt.

22   211, at 24.  Plaintiff alleges that Williamson told plaintiff afterward that Williamson would

23   cancel the holiday meal enhancements if plaintiff did not stop grieving.  Dkt. 211, at 25.

24

1    McDaniels and Garrett—other prisoners at SCCC—also filed declarations to support

2    plaintiff's claims.  Garrett states that he was informed by Williamson that Williamson intended

3    to cancel all meal enhancements if "you guys" [plaintiff and Garrett] continued to complain.

4    Dkt. 211, at 71.  In October 2015, McDaniels wrote a declaration that Williamson had stated to

5    McDaniels his intention to pull the fundraiser if plaintiff, McDaniels, and others continued to

6    complain.  Dkt. 211, at 73.  McDaniels later provided another declaration, in which he states that

7    Williamson told McDaniels that plaintiff "is gonna be on the next bus runnin'" related to his

8    complaints about the fundraiser.  Dkt. 211, at 99, 102.  McDaniels recalls being confronted by

9    other prisoners over plaintiff's grievances and that the prisoners threatened that plaintiff would

10   end up in the hospital if he continued filing grievances.  Dkt. 211, at 98.

**DISCUSSION**

### I. Summary Judgment Legal Standard

Summary judgment is appropriate where the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  In making this determination, the Court must view the evidence in the light most

favorable to the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).  The materiality

of a given fact is determined by the required elements of the substantive law under which the

claims are brought.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual disputes

that do not affect the outcome of the suit under the governing law will not be considered.  *Id.*

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

the motion must do more than simply show that there is some metaphysical doubt as to the

material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The

opposing party cannot rest solely on his or her pleadings but must produce significant, probative

evidence in the form of affidavits, and/or admissible discovery material that would allow a

1  reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,

2  weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

3  the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d

4  1539, 1542 (9th Cir. 1989). Moreover, the Court may grant summary judgment as a matter of

5  law when the nonmoving party fails to make a sufficient showing on an essential element of a

6  claim in the case on which the nonmoving party has the burden of proof. *See Celotex Corp. v.*

7  *Catrett*, 477 U.S. 317, 323 (1986).

8    **II. Claims against Williamson**

9    Defendants argue that plaintiff has failed to provide any admissible evidence that

10  Williamson retaliated against him and that alternatively, qualified immunity shields them from

11  liability for damages in their personal capacities. *See* Dkt. 199. The undersigned has considered

12  the balance of defendants' arguments and finds that they fail.

13    **A. Dead Man's Statute Does Not Apply to § 1983 Claims**

14    The Ninth Circuit did not substantively discuss the evidentiary ruling that the Dead

15  Man's Statute applied. *See* Dkt. 189. Rather, the Ninth Circuit focused on the factual issues

16  raised by one of the McDaniels declarations:

17
18    The district court granted summary judgment on [plaintiff's] retaliation claim
      against defendant Williamson on the basis that Washington's Dead Man's Act
      would preclude [plaintiff] from testifying about this claim at trial in light of
19    Williamson's intervening death. However, in the sworn declaration of Peter
      McDaniels, McDaniels corroborated [plaintiff's] allegations that Williamson
20    retaliated against [plaintiff] for filing a grievance. Because the McDaniels[]
      declaration raises a genuine dispute of material fact as to whether Williamson
21    retaliated against [plaintiff], we reverse the judgment as to this claim only and
      remand for further proceedings.
22  Dkt. 189, at 4.

23

24

1    The Court's prior, undisturbed ruling on the evidentiary issue would typically be binding

2    on the Court in future decisions in this matter.  *See United States v. Alexander*, 106 F.3d 874,

3    875 (9th Cir. 1997).  But a prior decision that is clearly erroneous and the enforcement of which

4    would work a manifest injustice is not binding on the Court.  *Jeffries v. Wood*, 114 F.3d 1484,

5    1489 (9th Cir. 1977) (*en banc*) (footnote and internal quotation omitted), *overruled on other*

6    *grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).

7    This Court's first duty is to get it right.  This evidentiary ruling is wrong—and manifest

8    injustice would occur if the error was not corrected.

9    First, the prior report and recommendation is clearly erroneous since the Washington

10    Dead Man's statute applies only to claims or defenses "for which state law supplies the rule of

11    decision."  Fed. R. Evid. 601.  In a § 1983 civil rights action, federal law—§ 1983—supplies the

12    rule of decision—not state law.  *Accord Longoria by Longira v. Wilson*, 730 F.2d 300, 304 (5th

13    Cir. 1984) (Texas Dead Man's statute did not apply in § 1983 action); *Savarese v. Agrissi*, 883

14    F.2d 1194, 1200 n.10 (3d Cir. 1989).  Although there is no Ninth Circuit authority on point, the

15    authority from the other circuits and district courts is persuasive on this issue.

16    The undersigned finds no support for defendants' argument that the Washington State

17    Dead Man's Statute should apply here—indeed the case law from other districts is to the

18    contrary.  *See, e.g.*, *Davis v. Packer Eng'g, Inc.*, No. 11-CV-07923, 2017 WL 11540164, at *1

19    (N.D. Ill. Jan. 12, 2017) (Illinois Dead Man's statute did not apply for reasons including that the

20    case was brought under Title VII, not state law); *Prime Healthcare Servs., Inc. v. Harris*, No.

21    316CV00778GPCAGS, 2017 WL 3525169, at *11 (S.D. Cal. Aug. 16, 2017) (state law privilege

22    against introduction of statements made during mediation did not apply under Rule 601 in §

23

24

1983 action); *Donaldson v. Hovanec*, 473 F. Supp. 602, 610 (E.D. Pa. 1979) (state law Dead

Man's Statute did not apply in § 1983 action).

Second, it works a manifest injustice to exclude much of plaintiff's evidence on the basis

of a state rule of evidence that should not apply.  Therefore, the undersigned considers all of

plaintiff's evidence—including testimony and affidavits from plaintiff about Williamson's

statements in front of or to plaintiff—in making a recommendation on the parties' cross-motions.

### B.  Retaliation Legal Standard

Prisoners retain a First Amendment right to file prison grievances.  *See Rhodes v.*

*Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Retaliatory actions taken against a prisoner for

exercising that right to file a grievance violates the First Amendment.  *Id.*  The elements of such

a claim are—

> (1) An assertion that a state actor took some adverse action against an inmate (2)
> because of (3) that prisoner's protected conduct, and that such action (4) chilled the
> inmate's exercise of his First Amendment rights, and (5) the action did not
> reasonably advance a legitimate correctional goal.

*Id.* at 567–68 (9th Cir. 2005) (footnote and citations omitted).

### C.  Analysis of the Claims Against Williamson

Plaintiff's allegations that Williamson retaliated fall into two categories:  first, claims that

Williamson threatened to have plaintiff transferred if he proceeded with a grievance about DOC

food policies; and second, claims that plaintiff later learned that Williamson had told other

prisoners that he would cancel fundraisers and meal enhancements if plaintiff continued filing

grievances and making complaints.   The undersigned addresses these claims in turn.

#### 1.  May 2015 Threat to Transfer

Plaintiff states that in May 2015, Williamson met with plaintiff to interview him

regarding a grievance.  Dkt. 211, at 2.  Williamson was "'vis[i]bly upset and angry' and

1    threatened to get [plaintiff] transferred to another prison if he pursued his grievance." Dkt. 211,

2    at 2. Plaintiff states that Williamson told plaintiff that he could have plaintiff transferred by

3    sending an email and that plaintiff feared he would lose his job in the welding program and

4    ability to visit with his mother at SCCC. Dkt. 211, at 20–21. Plaintiff also relies on McDaniels'

5    (his cellmate's) declaration that sometime later, at a meeting with Williamson, Williamson told

6    McDaniels that plaintiff would be "on the next bus runnin,'" related to his complaints about

7    fundraisers. Dkt. 211, at 99.

8         Defendants argue that "no reasonable factfinder could interpret any punishment or

9    adverse regulatory action" from Williamson's statement to plaintiff that Williamson could send

10   an email and get plaintiff transferred if he pursued his grievance. *See* Dkt. 215, at 4. But the

11   Ninth Circuit has held that even an implicit threat—such as a grievance coordinator warning a

12   plaintiff to be "careful" what he writes in a grievance—can create triable issues of fact regarding

13   retaliation. *See Brodheim v. Cry*, 584 F.3d 1262, 1264 (9th Cir. 2009).

14        A reasonable fact finder could reasonably find that Williamson's alleged statement that

15   he would try to have plaintiff transferred if he proceeded with his grievance was an explicit

16   threat—and not an attempt to "help" plaintiff as defendants assert. And threats of transfer can

17   form the basis for a successful claim of retaliation. *See, e.g., Gomez v. Vernon*, 255 F.3d 1118,

18   1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [plaintiff's] complaints

19   about the administration of the [prison] library" were sufficient to ground a retaliation claim).

20        Defendants argue that there is no evidence from which a fact finder could find that

21   Williamson's words had a chilling effect. *See* Dkt. 215, at 4. The proper First Amendment

22   inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from

23   future First Amendment activities." 192 F.3d 1283, 1300 (9th Cir. 1999). On this point, plaintiff

24

1    provides his own testimony that Williamson, who was "well[-]liked by many staff" and "had a

2    lot of power and friendships to get people" transferred, was able to get him transferred indirectly,

3    by falsifying allegations against plaintiff or by using his influence with other DOC staff. Dkt.

4    211, at 21. A fact finder could find from this evidence that a person of reasonable firmness

5    would be chilled, even knowing that Williamson himself did not have authority to direct

6    transfers.

7         Defendants appear to argue that because plaintiff was not actually transferred until much

8    later, he cannot prevail on a retaliation claim. *See* Dkt. 213, at 3. But threats alone can be

9    sufficiently adverse actions to prevail on a claim of retaliation, even if the threats are never

10   carried out. *Shepard v. Quillen*, 840 F.3d 686, 688–89 (9th Cir. 2016); *Brodheim v. Cry*, 584

11   F.3d 1262, 1270 (9th Cir. 2009).

12        Contrary to defendants' arguments (*see* Dkt. 215, at 3), a prisoner employee does not

13   have to go so far as to say "if you grieve again, I will transfer you"—rather, case law establishes

14   that implicit threats and threats that are never carried out can establish a viable retaliation claim.

15   Just so here: plaintiff's testimony that Williamson implied that he would have plaintiff

16   transferred if he did not stop grieving the DOC food policy is, if true, adequate support for a

17   claim of retaliation for filing grievances.

18              **2.  Alleged Statements to Other Prisoners about Plaintiff's Grievances**

19        Plaintiff states that in July and September 2015, he complained to Williamson (the only

20   person who knew of these complaints) about the lack of Halal options at an upcoming fundraiser

21   event involving food and that he was subsequently threatened and harassed by other prisoners

22   about his complaints. Dkt. 211, at 23–24. Plaintiff asserts that he was told that Williamson

23   showed other prisoners plaintiff's grievances and said that "he was going to cancel the

24

fundraisers because [plaintiff] kept complaining about the lack of Halal food items." Dkt. 55, at

19. Williamson reportedly told other prisoners that he would "cancel the fund raisers if

'Becker[,]' 'McDaniels[,]' and those 'White Muslims' kept complaining"; and that other

prisoners threatened plaintiff to "'watch' himself if the fundraisers were canceled." Dkt. 211, at

4–5.

Williamson ultimately canceled the fundraiser (*see* Dkt. 211, at 63), and plaintiff states

that he "was harassed by inmates who had been shown his complaints and bl[a]med him." Dkt.

211, at 4. Plaintiff alleges that he later made a complaint of holiday meal discrimination, and

that other prisoners threatened him about this complaint, as well. Dkt. 211, at 5. Plaintiff later

learned that defendant McTarsney had emailed Williamson about plaintiff's holiday meal

complaints, so that it appeared to have been Williamson who leaked plaintiff's complaints. Dkt.

211, at 24. According to plaintiff, he was "labeled a 'snitch'" because of this. Dkt. 211, at 27.

Plaintiff also relies on the declarations of other prisoners, Justin Garrett and Peter

McDaniel. *See* Dkt. 211, at 71. According to Garrett, Williamson allegedly told Garret that he

was going to "cancel and [sic] the meal enhancements if you guys [including Becker] want to

complain." Dkt. 211, at 71. According to McDaniels, Williamson told McDaniels that

Williamson was going to pull a fundraiser if prisoners including plaintiff continued to complain.

McDaniels states that "three very angry inmates" told McDaniels that plaintiff would be

hospitalized for writing grievances and that other prisoners continued to make threats about

plaintiff to McDaniels. Dkt. 211, at 98, 100.

Defendants argue that plaintiff's claims rely entirely on hearsay. *See* Dkt. 215, at 3–4.

To the contrary—for instance, plaintiff states that other prisoners harassed him based on his

grievances, despite that only Williamson would have known of certain complaints that plaintiff

1    made. This is non-hearsay, circumstantial evidence that if believed, would support plaintiff's

2    claims. Retaliatory motive may be shown by a defendant's knowledge of the protected activity,

3    the defendant's conduct and statements, and the timing of the allegedly retaliatory act.

4    *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988).

5         Further, plaintiff, McDaniels, and Garrett each state that Williamson told them directly

6    that he would cancel fundraisers/enhancements if plaintiff and others kept raising issues.

7    Defendants also offer no explanation of why statements made to plaintiff and others by

8    Williamson would be hearsay, given that statements by a party-opponent are typically not

9    excluded as hearsay. And that Williamson made such statements to McDaniels and Garrett

10   supports plaintiff's claim that Williamson was telling other prisoners about plaintiff's complaints

11   and grievances so that they would pressure plaintiff to drop the issues.

12        Defendants also take issue with McDaniels' declarations, arguing that his statements are

13   based on hearsay and matters not within his personal knowledge and that McDaniels provides no

14   admissible evidence to support the retaliation claims. *See* Dkt. 199, at 7–8. However, setting

15   aside McDaniels' declarations, as noted above, plaintiff himself has provided evidence to support

16   his claims, including that after plaintiff complained to Williamson, prisoners started threatening

17   him about his complaints. Moreover, in response to defendants' summary judgment motion,

18   McDaniels has filed an additional declaration stating that Williamson told McDaniels that

19   Williamson would cancel the fundraiser in light of McDaniels' and Becker's complaints. *See*

20   Dkt. 211, at 97–98.

21        Defendants alternatively assert (without reference to any case law as support) that

22   "[t]elling third parties that an optional, prison-wide fundraiser might be canceled is not an

23   'adverse action' for the purposes of a retaliation claim." Dkt. 215, at 4. But the crux of

24

1    plaintiff's allegations is not that he suffered from having the events cancelled; rather, plaintiff

2    asserts that Williamson intentionally made plaintiff a target for retribution by other prisoners as

3    punishment for plaintiff's complaints and grievances.  Although "canceling a prison-wide

4    voluntary privilege" may not be an adverse action for retaliation purposes, labelling a prisoner a

5    "snitch" and having him become a target for harassment by other prisoners because of protected

6    activity certainly is such an adverse action.  Indeed, the Ninth Circuit has held that spreading the

7    rumor that a prisoner is a "snitch" for filing grievances can form the basis of a viable retaliation

8    claim.  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989); *accord Martin v.*

9    *Dewsnup*, No. 6:11-CV-06420-AC, 2015 WL 13730889, at *19 (D. Or. Dec. 30, 2015), *report*

10   *and recommendation adopted*, No. 6:11-CV-06420-AC, 2016 WL 614429 (D. Or. Feb. 14, 2016)

11   (viable cause of action for retaliation where defendant broadcast to the prison population that

12   plaintiff was filing grievances, potentially resulting in plaintiff being labeled a "snitch.").

13            **C.  Qualified Immunity**

14            Defendants alternatively argue that qualified immunity shields Williamson from liability.

15   *See* Dkt. 199, at 10; Dkt. 215, at 5.

16            A defendant may raise the defense of qualified immunity at multiple stages in a

17   proceeding, including in a motion for summary judgment.  *Behrens v. Pelletier*, 516 U.S. 299,

18   306 (1996).  When the defense is raised in a summary judgment motion, the Court inquires

19   whether "the evidence before it (in the light most favorable to plaintiff)" meets the qualified

20   immunity prongs.  *Id.* at 309.  The Supreme Court has observed that "successful pretrial

21   assertions of immunity seem to be a rare occurrence."  *Id.* at 310.

22            Here, granting the summary judgment motion on the basis of qualified immunity would

23   be appropriate only if the facts taken in the light most favorable to plaintiffs do not violate a

24

1    clearly established right. *See id.* at 313 ("[T]he District Court's denial of petitioner's summary

2    judgment motion necessarily determined that certain conduct attributed to [defendant] (which

3    was controverted) constituted a violation of clearly established law. . . ."); *see also Scott v.*

4    *Harris*, 550 U.S. 372, 378 (2007) (a court must construe the facts in the light most favorable to

5    plaintiff and then ask if, under these facts, the officer is entitled to qualified immunity as a matter

6    of law).

7         A "plaintiff bears the burden of proof that the right allegedly violated was clearly

8    established at the time of the alleged misconduct." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627

9    (9th Cir. 1991). "If plaintiff carries this burden, then [defendants] must prove that their conduct

10   was reasonable even though it might have violated constitutional standards." *Id.*

11        Defendants first assert that plaintiff "has failed to demonstrate a constitutional violation[,]

12   and [d]efendants are entitled to qualified immunity on that basis." Dkt. 199, at 10. Not so—

13   plaintiff has provided evidence from which a reasonable trier of fact could conclude that

14   Williamson violated plaintiff's right to be free from retaliation for engaging in protected activity,

15   as noted above.

16        Second, defendants argue that plaintiff has not met his burden to show that the rights at

17   issue were clearly established. Dkt. 199, at 10. Specifically, defendants frame the rights at issue

18   as the right to be free from "threatening to cancel an optional privilege such as a food fundraiser

19   or holiday meal enhancement" or "offering to help an inmate move after he expressed general

20   dissatisfaction with his current facility." Dkt. 215, at 6. But this framing of the right at issue

21   again misses the point—taking plaintiff's version of events as true, it stretches the bounds of

22   plausibility to frame Williamson's statement about getting plaintiff transferred as anything more

23   than a threat. And plaintiff is not merely challenging threats to cancel events but Williamson's

24

1    allegedly making plaintiff a target for other prisoners based on his filing complaints and

2    grievances.

3        Plaintiff provides four citations to Ninth Circuit opinions clearly establishing that such

4    actions violate the right to be free from retaliation for protected action.  *See* Dkt. 216, at 5–6.  In

5    *Rhodes v. Robinson*, the Court held that a threat to transfer a prisoner because he filed grievances

6    was "the very archetype of a cognizable First Amendment retaliation claim."  408 F.3d 559, 568

7    (9th Cir. 2005).  In *Gomez v. Vernon*, the Court held that repeated (albeit ultimately

8    unsuccessful) threats to have plaintiff transferred could form the basis for a retaliation claim.

9    255 F.3d 1118, 1127 (9th Cir. 2001).  In *Pratt v. Rowland*, the Court held stated that "it would be

10   illegal for DOC officials to transfer and double-cell [plaintiff] solely in retaliation for his

11   exercise of protected First Amendment rights."  65 F.3d 802, 807 (9th Cir. 1995).  And in

12   *Valandingham*, the Court held that prison employees' conspiring to label a plaintiff as a "snitch"

13   because he had filed grievances, subjecting him to retaliation by other prisoners, could present a

14   viable First Amendment claim.  866 F.2d at 1138.  Therefore, defendants are incorrect that

15   plaintiff has not identified a clearly established right.  *See also Brodheim*, 584 F.3d at 1269

16   (citing *Rhodes*, 408 F.3d at 566) ("Retaliation against prisoners for exercise of their First

17   Amendment right to file prison grievances "is itself a constitutional violation, and prohibited as a

18   matter of 'clearly established law.'").

19       Third, defendants argue that they "could reasonably have believed their actions were

20   lawful," referencing "adherence to DOC policy and efforts to resolve [plaintiff's] complaints

21   consistent with the Offender Grievance Program"—efforts made by defendant McTarsney and

22   Caldwell.  *See* Dkt. 199, at 3, 10.  It is unclear what bearing defendants McTarsney's and

23   Caldwell's compliance with DOC policy and the Offender Grievance Program would have on

24

1    the reasonableness of Williamson's actions.  Defendants fail to meet their burden to show that

2    Williamson's conduct was reasonable even if it violated the right to be free from retaliation for

3    protected activity.

4           For all these reasons, defendants have failed to show that summary judgment dismissal of

5    the § 1983 claims against Williamson is appropriate.

6    **III.  Claims against Caldwell and McTarsney**

7           The Ninth Circuit also remanded for consideration of plaintiff's claims against Caldwell

8    and McTarsney that were related to plaintiff's claim of retaliation by Williamson.  Order (Dkt.

9    28) at 1–2, *Asher James Becker v. Brent Carney et al.*, No. 18-35373 (9th Cir. May 29, 2019).

10   The relevant claims against Caldwell and McTarsney are that they refused to process plaintiff's

11   grievances against Williamson.  Dkt. 55, at 24; *see also* Dkt. 211, at 3–5.

12          However, the Ninth Circuit has never held that merely refusing to process a grievance—

13   without some additional punitive action or threat of punitive action—amounts to retaliation.  *See*

14   *Brodheim*, 584 F.3d at 1270–71 (discussed in *Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir.

15   2018) ("Neither our prior case law nor that of the Supreme Court has clearly established that

16   merely refusing to accept a grievance for processing is a retaliatory adverse action."), *cert.*

17   *denied*, 139 S. Ct. 1531, 204 L. Ed. 2d 237 (2019).

18          As such, the Court should find that there is no clearly established law that Caldwell and

19   McTarsney's alleged actions violated plaintiff's right to be free from retaliation for filing

20   grievances.  Because plaintiff has failed to show that defendants Caldwell and McTarsney

21   violated clearly established law, qualified immunity applies.  Defendants' summary judgment

22   motion should be granted in this regard, and the federal law claims against Caldwell and

23   McTarsney should be dismissed with prejudice.

24

**IV. State Law Claims**

Defendants argue that plaintiff's state law claims should be dismissed on summary judgment because plaintiff's scant references to "WA State negligence tort laws" and "WA State Official Misconduct" fail to explain the basis for his claims under state law. *See* Dkt. 199, at 11.

The undersigned agrees that dismissal with prejudice of the state law claims against these three defendants is appropriate. Upon careful review, plaintiff's only assertion of state law claims related to the claim that Williamson retaliated against him is his single statement that Williamson, McTarsney, and Caldwell "committed WA State Official Misconduct." Dkt. 55, at 24. Plaintiff does not cite to any particular state law or explain the legal basis for his claim.

The nearest analogue to plaintiff's claim is ch. 42.20 RCW, which criminalizes various types of "Misconduct of Public Officers." However, even liberally construing plaintiff's claims as brought under this chapter, plaintiff has no private right of action—that is, no right to bring a civil suit to vindicate violation of the statute—under the statutes within the chapter most similar to his claims. *See, e.g.*, *Weitzman v. City of Seattle*, CASE NO. C14-1041 MJP, 2016 WL 852749, at 3 (W.D. Wash. March 4, 2016) (holding that RCW 42.20.040, regarding an official's false report, does not create a private right of action); *Sutton v. Washington State Dep't of Corr.*, No. 2:13–CV–5064–SMJ, 2015 WL 4748233, at 5 (E.D. Wash. Aug. 11, 2015) (RCW 42.20.100, regarding a failure of an officer to perform a legal duty, does not create a private right of action).

This matter has been pending since April 2016 (*see* Dkt. 1), plaintiff has amended the complaint once (*see* Dkt. 51), and defendants have argued on at least two occasions that plaintiff's state law claims are too vague to survive. *See* Dkt. 110, at 24; Dkt. 199, at 11. Yet, plaintiff has never provided a legal basis for his state law claim of "official misconduct." *See,*

*e.g.*, Dkt. 151, at 24; Dkt. 167, at 11.  Because upon review, plaintiff does not have a private right of action to bring a claim under the most analogous provisions of ch. 42.20 RCW to his claims and because plaintiff has failed to amend or come forward with legal argument to support those claims over the past four years of litigation, dismissal with prejudice on summary judgment is appropriate.

Therefore, the Court should dismiss with prejudice the remaining state law claim in this action:  the claim against Williamson, McTarsney, and Caldwell for Washington State "official misconduct."

### V.  Plaintiff's Summary Judgment Motion

In response to defendants' summary judgment motion, plaintiff filed his own response and cross-motion.  *See* Dkt. 211.  Defendants ask that the Court deny the motion as untimely. *See* Dkt. 213, at 1.

The dispositive motions deadline set by the Court is the deadline for all summary judgment motions to be filed.  *See* Local Civil Rule 16(b)(5).  Here, the Court set the dispositive motion deadline for October 23, 2019.  *See* Dkt. 198.  Although plaintiff requested an extension of time in which to respond to defendants' summary judgment motion, he did not request—and the Court did not grant—an extension of the time for him to file his own summary judgment motion.  *See* Dkts. 202, 205, 207, 210.  Plaintiff did not file his motion for summary judgment until February 18, 2020.  *See* Dkt. 211.  Therefore, plaintiff's summary judgment motion—which he filed more than three months after the deadline for dispositive motions—is untimely and should be denied.  Although plaintiff cannot obtain summary judgment in his favor because his motion for summary judgment is untimely, the Court should consider his arguments in response to defendants' summary judgment motion, as the undersigned has done here.

1

## VI. Motion for an Extension or Stay

2

After the briefing on the parties' summary judgment motions became ripe for

3

consideration, plaintiff requested a sixty-day stay in this matter—or alternatively, an extension of

4

sixty days to existing deadlines. *See* Dkt. 217. Plaintiff bases his request on his release from

5

prison on June 29, 2020, and that he requires additional time to adjust to living at home and to

6

find resources for transportation and legal research. *See* Dkt. 217. Defendants do not oppose the

7

Court "awarding additional time for any actions that would otherwise be required of the parties

8

between June 25, 2020, and August 24, 2020" in light of difficulties related to the current

9

COVID-19 outbreak in Washington State. Dkt. 218, at 1–2.

10

Based on defendants' lack of opposition and plaintiff's reasons for requesting additional

11

time, the Court finds good cause to grant an extension to existing deadlines. At present, the only

12

deadline in this matter is for the parties to file their objections to this Report and

13

Recommendation. The Court directs the Clerk's Office to set the deadline for objections to the

14

Report and Recommendation as August 28, 2020.

15

## CONCLUSION

16

Defendants' summary judgment motion (Dkt. 199) should be granted in part and denied

17

in part and plaintiff's cross-motion for summary judgment (Dkt. 211) should be denied. All

18

claims should be dismissed with prejudice except the § 1983 claim that Joe Williamson retaliated

19

against plaintiff. The Court grants in part the motion to stay (Dkt. 217): this matter is not

20

stayed, but the deadline to file objections to the Report and Recommendation is extended as set

21

forth below.

22

Failure to file objections to this Report and Recommendation will result in a waiver of

23

those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. §

24

636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). The Clerk is directed to set the matter for consideration on **August 28, 2020** as noted in the caption.

Dated this 15th day of July, 2020.

J. Richard Creatura
United States Magistrate Judge